IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:26-cv-01787-CNS

ALYMBEK A. SATYBALDIEV,

     Petitioner,

v.

JUAN BALTAZAR, Warden, Denver Contract Detention Facility;
ROBERT HAGAN, Director, ICE Denver Field Office;
TODD M. LYONS, Acting Director, Immigration and Customs Enforcement;
MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; and
TODD BLANCHE, Acting Attorney General, United States Department of Justice,

     Respondents.

---

**ORDER**

---

Before the Court is Petitioner's Verified Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241. ECF No. 1. In their Response, Respondents acknowledge that the issue this case presents is not "materially different from an issue this Court has resolved in a prior ruling in another case." ECF No. 10 at 2 (citing *Hernandez v. Baltazar, et al.*, 1:25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025). Indeed, Respondents acknowledge that the Court's "prior ruling on this issue would lead the Court to reach the same result here," given "the facts of this case are not materially distinguishable" from that and other cases in which the Court addressed 8 U.S.C. § 1225's applicability, ECF No. 10 at 4. In light of these representations and the Court's prior analyses of this issue,

1

*see generally Singh v. Baltazar*, 2026 WL 352870, the Court GRANTS Petitioner's petition, ECF No. 1.

The Court turns now to a recent Second Circuit opinion that bears on its analysis of the fundamental issue that Petitioner presents here: whether Petitioner's detention is governed by "Section 1226(a) [or] Section 1225(b)(2)(A)." *Cunha v. Freden*, No. 25-3141-PR, --- F.4th ----, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026). *Cunha*'s outcome and statutory interpretations, while consistent with observations made by the Seventh Circuit, collide with those from the Fifth and Eighth Circuits. *Compare id.*, *and Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025)*, with Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 498 (5th Cir. 2026); *and Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026).[*] Recall *Buenrostro-Mendez* was the result of a divided panel. *See Buenrostro-Mendez*, 166 F.4th at 520–21 (Douglas, J., dissenting); *Singh v. Baltazar*, No. 1:26–cv–00336–CNS, --- F. Supp. 3d ----, 2026 WL 352870, at *5 (D. Colo. Feb. 9, 2026). *Avila* likewise suffers division. *See* 170 F.4th at 1138 (Erickson, J., dissenting).

Regardless, as the Court has previously observed, "[it] is bound only by decisions from the United States Supreme Court and the Tenth Circuit," *Singh*, 2026 WL 352870,

---

[*] Even more recently, the Eleventh Circuit has joined the conversation, agreeing with the Second Circuit in *Cunha* and the Seventh Circuit in *Castañon-Nava*: "The text and statutory structure of the INA, bolstered by the long history of detention across our immigration laws and the congressional purpose in passing IIRIRA, yield the conclusion that no-bond detention generally applies to arriving aliens seeking lawful entry to the country, and not to aliens who are simply present here." *Hernandez Alvarez v. Warden*, No. 25-14065, --- F.4th ----, 2026 WL 1243395, at *1 (11th Cir. May 6, 2026). *See also id.* at *21 ("We are obliged to read the words found in the statute—'an alien who is an applicant for admission' and 'an alien seeking admission'—in line with the meaning Congress has given them. When we do so, it appears to us that Congress has instead preserved the longstanding border-interior distinction for purposes of detention, a position it has taken for over a hundred years."); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, --- F.4th ----, 2026 WL 1223250, at *13 (7th Cir. May 5, 2026) ("As such, reading § 1225(b)(2)(A) in its entirety indicates that the mandatory detention it authorizes is directed at arriving noncitizens, not those who are already here.").

2

at *3, rendering *Cunha*, like *Buenrostro-Mendez* and *Avila*, "at most persuasive," *id.,* given especially that the Tenth Circuit has not weighed in on this issue. But unlike *Buenrostro-Mendez*, *Cunha*'s interpretation of the relevant statutory provisions *is* persuasive. Indeed, "[i]f Congress had wanted to limit Section 1226(a)(2) only to those noncitizens charged with deportability as opposed to inadmissibility, it would have said so." *Cunha*, 2026 WL 1146044, at *5 (citation modified). But it didn't. *See id.* ("We cannot replace the actual text with speculation as to Congress' intent." (citing *Magwood v. Patterson*, 561 U.S. 320, 334 (2010)); *Castañon-Nava*, 161 F.4th at 1061. And so "Section 1226(a) plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission." *Cunha*, 2026 WL 1146044, at *5.

Section 1225 changes nothing. In *Cunha*'s words: "Section 1225(b)(2)(A) applies 'in the case of an alien who is an applicant for admission' and provides for detention of 'an alien seeking admission.' It therefore applies only to a noncitizen who is both an 'applicant for admission' *and* who is 'seeking admission.'" 2026 WL 1146044, at *5 (emphasis added). This observation is consistent with one made by this Court and other jurists across the country. *See, e.g., Singh*, 2026 WL 352870, at *4 ("But this conclusion proceeds explicitly from the premise that these words—'applying' and 'seeking'—in this statutory context lack a material disjunction. That's wrong." (citation modified)); *Buenrostro-Mendez*, 166 F.4th at 510–11 (Douglas, J., dissenting). Take, for example, the following insight from *Buenrostro-Mendez*'s dissent: "On the government's reading, the phrase 'alien seeking admission' does no independent work. But it is . . . a cardinal

3

principle of statutory construction that we must give effect, if possible, to every clause and word of a statute. Conversely, Petitioners' reading gives 'seeking admission' independent force." *Id.* at 511 (Douglas, J., dissenting). Now compare *Cunha*'s majority: "We cannot ignore the phrase 'seeking admission,' as the government's interpretation would have us do. Doing so would render it mere surplus, and it is our duty to give effect, if possible, to every clause and word of a statute. Here, it is possible to give effect to each term, as each has a clear statutory definition or, if undefined by the statute, an ordinary, judicially-settled meaning." 2026 WL 1146044, at *6 (citation modified). Finally, query if these are "insights" at all, or basic exercises in statutory interpretation using well-settled principles. *See, e.g., Singh*, 2026 WL 352870, at *4 ("[S]tatutory terms are given their plain and ordinary meaning." (citation modified)); *de Jesus Aguilar v. Eng*., No. 3:25–CV–898 DRL–SJF, 2025 WL 3280219, at *7 (N.D. Ind. Nov. 25, 2025); *Bondi v. VanDerStok*, 604 U.S. 458, 477 n.4 (2025) ( "[O]ur task here, *as ever*, is to interpret the words Congress enacted consistent with their ordinary meaning." (citation modified)); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 403 (2024) ("Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction . . . .").[†]

Furthermore, the Court agrees with *Cunha* that the broader statutory context and structure bolster its *ordinary meaning* conclusion—as well as that *Jennings* places the relevant statutory provisions out of harmony with one another. *See Cunha*, 2026 WL

---

[†] To the extent that the *Hernandez Alvarez* dissent charges its majority with interpreting "applicant for admission" and "seeking admission" as synonyms, 2026 WL 1243395, at *22 (Lagoa, J., dissenting), the majority's analysis on its face refutes this charge: "Congress employed two different phrases, introduced by separate conditional terms, which carry distinct definitional meanings within the statute. They are not 'synonymous' on the text supplied." *Id.* at *10.

1146044, at *6 ("Indeed, the [Supreme] Court [in *Jennings*] left no doubt as to its view regarding the differences between Sections 1225 and 1226 . . . because it repeated later in the opinion that Section 1226 'applies to aliens already present in the United States.'" (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018)). *See also id.* at *24 ("'U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c).' Because Petitioner was 'already in the country' and not 'seeking admission into' it, his detention is governed by § 1226." (quoting *Jennings*, 583 U.S. at 289)) (Cabranes, J., concurring). In this way *Cunha* is consistent with the Court's own prior analyses of § 1225, § 1226, and *Jennings*. *See generally Nava Hernandez*, 2025 WL 2996643.

In sum: the Court has explained *Buenrostro-Mendez*'s faults. *See generally Singh*, 2026 WL 352870. It has now explained *Cunha*'s soundness. And following these explanations, it affirms its conclusion that § 1225's application here is improper. *See also Singh*, 2026 WL 352870, at *6 ("Congress, in considering the relevant statutory language, clearly expressed that § 1225 shouldn't apply here." (citation modified)).

To be sure, and as explained above, some courts have gone the other way, including one in this judicial district. *See, e.g., Singh v. Blanche*, 1:26–cv–421–DDD–KAS, ECF No. 12 at 14 ("I am persuaded that the Fifth and Eighth Circuits and the growing minority of district courts holding that Section 1225(b)(2)(A) applies to 'applicants for admission' in this situation have the better interpretation of the statutory text."). While the

Court disagrees with their analyses, the Court does agree with them that statutes "'do—in fact, must—have a single, best meaning.'" *Id.* at 13 (quoting *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). It's just that the Court has considered *Cunha* as another "tool at [its] disposal to determine the best reading of" § 1226 and § 1225. *Loper Bright*, 603 U.S. at 400. And the "best reading," *see id.*, of these statutes—consistent with the Court's prior orders, orders from numerous courts across the country, including *Cunha*, and even more recently *Hernandez Alvarez*, and basic interpretive principles—demands Petitioner's release.

\* \* \*

For the reasons set forth above, the Court GRANTS Petitioner's Verified Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241. ECF No. 1. It is FURTHER ORDERED that Respondents shall release Petitioner from custody immediately, but no later than within 24 hours of this Order, and may not impose any additional conditions of release or supervision beyond those he was subject to immediately prior to his recent detention.‡ Respondents SHALL FILE a status report within TWO DAYS of this Order to certify compliance. Respondents are further ENJOINED AND RESTRAINED from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing, that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified. At any such bond hearing, the government

---

‡ Although in reply Petitioner appears to seek relief in the form of a bond hearing, *see, e.g.,* ECF No. 11 at 5, the Court grants Petitioner relief consistent with the requests contained in the petition. *See* ECF No. 1 at 6 ("Petitioner respectfully requests that this Court . . . order his release under appropriate conditions of supervision."); *id.* at 28 (requesting that the Court issue a "Writ of Habeas Corpus directing Respondents to immediately release Petitioner from immigration detention under reasonable conditions of supervision").

shall bear the burden of proof. The Court notes that, while Respondents argue immediate release is an inappropriate remedy, their arguments fail to persuade. *Compare* ECF No. 10 at 4–5, *with Singh*, 2026 WL 352870, at *6; *Diallo v. Baltazar*, No. 1:25–cv–3548-SKC, 2026 WL 237296, at *3 (D. Colo. Jan. 29, 2026); *and Rivero v. Mina*, No. 6:26–cv–66–RBD–NWH, 2026 WL 199319, at *4 (M.D. Fla. Jan. 26, 2026).

DATED this 8th day of May 2026.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge